## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

YANSY CAROLINA BLANCO DE
VILLATORO,

 *Petitioner*,

  v.

PAMELA BONDI, *et al.*,

 *Respondents*.

Case No. 26-cv-493-ABA

### MEMORANDUM OPINION

Petitioner Yansy Carolina Blanco de Villatoro has filed a motion to "enforce" this Court's February 12, 2026, order, which granted in part her petition for a writ of habeas corpus and held that she was "entitled to a bond hearing consistent with 8 C.F.R. §§ 236.1(d), 1003.19 and 1236.1(d)." ECF No. 3 ¶ 2. She argues that the bond hearing she received did not comply with that order or with the U.S. Constitution's guarantee of due process. But the decisions that Ms. Blanco de Villatoro challenges were largely discretionary, and this Court does not have jurisdiction to review discretionary decisions made by immigration judges regarding bond. To the extent this Court has jurisdiction to consider Petitioner's constitutional due process challenge, it does not succeed. For the reasons explained below, the Court will deny the motion and close this case.

## I. BACKGROUND

Ms. Blanco de Villatoro filed her petition in February 2026. ECF No. 1. She alleges that she was born in El Salvador and entered the United States in October 2023, at which time she was encountered by Immigration and Customs Enforcement ("ICE") and placed in removal proceedings. *Id.* ¶ 16. She was released on her own recognizance

shortly after being detained and since then has lived in Maryland with her two daughters. *Id.* ¶ 18; ECF No. 1-3; ECF No. 1-5. She was detained by ICE in February 2026 and filed a habeas corpus petition soon thereafter seeking immediate release or, in the alternative, a bond hearing before an immigration judge ("IJ"). ECF No. 1 ¶ 19; *id.* at 9–10.

The Court ordered the parties to either submit a proposed briefing schedule or file a joint notice stating that the issues overlap with other recent, immigration-related habeas cases within the District of Maryland related to the issue of 8 U.S.C. § 1225 and 8 U.S.C. § 1226 detentions. ECF No. 4. The parties responded by stating that Ms. Blanco de Villatoro's case was not materially different from the other cases and that briefing was not necessary. ECF No. 6. They also jointly stated that Ms. Blanco de Villatoro was being detained under 8 U.S.C. § 1226(b) for alleged violations of the Alternatives to Detention ("ATD") program, in which she had been enrolled following her initial detention. *Id.* at 1–2. The Court granted the Petition in part with respect to Ms. Blanco de Villatoro's request for a bond hearing. ECF No. 8. The Court's order largely adopted the parties' proposal, ordering that the "bond hearing shall be held within ten (10) days of Petitioner's filing such request with the Immigration Court." *Id.* at 2; *see also* ECF No. 6 at 2 (parties' joint notice "request[ing] that the Court enter an Order[] . . . [r]equiring that the bond hearing occur within ten days of Petitioner's filing such request").

The bond hearing took place on February 20, 2026 before Immigration Judge Thanos Kanellakos. ECF No. 9-1 (hearing transcript) at 3. Ms. Blanco de Villatoro was represented by counsel, Jared Jaskot (who does not represent her in the instant habeas petition). *Id.* at 2. Though the parties and the immigration court intended for Ms. Blanco de Villatoro to attend the hearing via a remote video link, she was not present.

2

*Id.* at 6. This was because she was detained at a facility in California, where the time was approximately 7:30 a.m. at the start of the hearing. *Id.* at 7–8. IJ Kanellakos recognized this issue but stated that he had "no control" over the personnel at the California facility. *Id.* at 8. Mr. Jaskot noted, "I wondered when I saw this 10:00 a.m. get set, and I was looking at the time zone question[,]" but he did not move for a continuance. *Id.*

Mr. Jaskot initially stated that he was not authorized to waive Ms. Blanco de Villatoro's appearance. *Id.* at 6. Immigration Judge Kanellakos stated in response, "[i]f you cannot waive the appearance of [Ms. Blanco de Villatoro], then the matter will have to be continued. In other words, I can continue it to next week." *Id.* He further stated "[a]gain, it's up to you. You're counsel of record, and it's your decision in the exercise of your best judgment." *Id.* at 7. IJ Kanellakos then went on to note that the time zone issue had occurred previously, and that it was "common for attorneys to waive the appearance of their clients under these circumstances." *Id.* at 9. In response to this, Mr. Jaskot stated, "I had potentially some questions for her, but they may be not so relevant given that the government, I don't think, is going to present any evidence of what I thought they would." *Id.* at 9. He then asked for a brief recess to consult with Ms. Blanco de Villatoro's family. *Id.* at 10. Once back on the record, Mr. Jaskot stated "I spoke to [Ms. Blanco de Villatoro's] sister. . . . I'm going to waive [her] presence in the interest of following the federal court order and being expeditious." *Id.* at 10–11.

Immigration Judge Kanellakos then began the hearing. After setting out some preliminary matters, IJ Kanellakos moved to Ms. Blanco de Villatoro's motion for a subpoena related to records of the private company that operated her Intensive Supervision Appearance Program (ISAP) electronic monitoring equipment. *Id.* at 12; *see also* ECF No. 9-3. That motion, which was filed before the hearing, sought "all records

relating to Mrs. Blanco de Villatoro's participation in [ISAP], including all records maintained by ICE's contractor, BI Incorporated ("BI Inc."), which administers the ISAP program[.]" ECF No. 9-3 at 2. The motion noted that "[t]he government is expected to rely on alleged biometric collection violations recorded through BI Inc.'s SmarkLINK application to oppose bond." *Id.* At the hearing, Mr. Jaskot noted that he may be able to withdraw the motion because when he asked DHS counsel prior to the hearing "if the government planned to present any evidence related to ISAP violations, my understanding was that they don't." ECF No. 9-1 at 12–13; *see also* ECF No. 9-6 ¶ 2 (declaration of Mr. Jaskot stating "I specifically asked whether the Government intended to present evidence at the hearing. DHS counsel represented to me that she did not intend to introduce any evidence whatsoever—not limited to ISAP violations or ATD compliance, but any evidence at all."). IJ Kanellakos then asked, "are any of these violations in the nature of—I'll give an example—[Ms. Blanco de Villatoro] was asked to appear at a date and time to report and she failed to report?" ECF No. 9-1 at 13. As counsel for DHS began to search for and upload a relevant record to answer this question (a Form I-213), IJ Kanellakos further clarified: "the Court is not saying that, for instance, a request to provide biometric information that is not complied with is okay, but there are degrees of potential violations. And the one that is of more concern, typically, is when a person is asked to personally appear or personally . . . check in" and fail to do so. *Id.* at 17.

The parties and IJ Kanellakos then reviewed the uploaded I-213 at the hearing. *Id.* at 22. The Form I-213 itself is not in the record before this Court, and Mr. Jaskot's declaration states that he did not receive the Form I-213 prior to the hearing, but the

parties do not dispute that it reflected "three 'failed home visits' and multiple 'missed biometric check-ins.'" ECF No. 9-6 ¶¶ 10, 11.

After reviewing the I-213, IJ Kanellakos heard argument from Mr. Jaskot on the issue of bond. Mr. Jaskot emphasized Ms. Blanco de Villatoro's lack of any history of violence and her close ties to the community and her family, highlighting the numerous witnesses who had submitted letters attesting to her good character and/or attended the hearing on her behalf. ECF No. 9-1 at 24–26; *see also* ECF No. 9-2 at 20–60 (community support letters). IJ Kanellakos sought the government's position on bond. Counsel for DHS only stated, "[w]e defer to the Court[.]" ECF No. 9-1 at 26.

IJ Kanellakos then provided an oral ruling denying bond. He stated that Ms. Blanco de Villatoro "is not a danger to the community," but that she was a "flight risk[.]" *Id*. at 27. IJ Kanellakos gave two reasons for this decision. First, he stated that his decision relied on the fact that Ms. Blanco de Villatoro's "applications for asylum . . . and withholding of removal under the Convention Against Torture were denied" and under appeal to the Board of Immigration Appeals ("BIA"), and thus there had been "a full adjudication" of her case. *Id*. at 27–28. Second, IJ Kanellakos cited the ISAP violations. He noted that even if "there was an issue with the app on the phone" with respect to the biometric check-ins, "what is of concern to the Court . . . are three home visits that were failed, January 30, 2024, March 27, 2024, and November 5, 2024." *Id*. at 29. IJ Kanellakos further stated "[a]s we discussed, the Court will accept as a given that there may very well have been a software issue. . . . But it is the home visits that were marked as failed in the I-213." *Id*. at 31.

Mr. Jaskot made an oral motion for the immigration judge to reconsider, contending essentially that he would not have waived his client's appearance and

withdrawn his motion for subpoena if he had known that IJ Kanellakos would rely upon the ISAP violations as a basis to deny bond. *Id.* at 32–33. Mr. Jaskot requested that the Court "not rely on the [I-213], or hold [the hearing] open for me to be able to get that information in my client's testimony." *Id.* at 35. IJ Kanellakos responded by noting that he "could base [the] decision" solely on the denial of Ms. Blanco de Villatoro's asylum and CAT applications, and that immigration courts may rely upon Form I-213s "in the absence of . . . proof of fraud or a willful misrepresentation." *Id.* at 36. He then denied the motion for reconsideration. *Id.* at 37.

Ms. Blanco de Villatoro returned to this Court, and filed the pending motion, entitled "Motion to Enforce This Court's Order And For Release Pending A Constitutionally Adequate Bond Hearing." ECF No. 9. She contends in her motion that the bond hearing was constitutionally inadequate and in violation of this Court's prior order. *Id.* Ms. Blanco de Villatoro requests a new bond hearing at which she can be present to testify, among other conditions. ECF No. 9 at 19. Defendants oppose Petitioner's motion, and also have moved to dismiss, contending that the petition should be dismissed for lack of jurisdiction and/or failure to state a claim. ECF No. 14.

## II.    DISCUSSION

Ms. Blanco de Villatoro's motion challenges three aspects of how Immigration Judge Kanellakos handled the bond hearing. First, she contends that IJ Kanellakos did not conduct an "individualized assessment" or weigh the "totality of the circumstances" in denying her request for bond. ECF No. 9 at 11–15. Second, Ms. Blanco de Villatoro argues that she was denied due process because her counsel at the bond hearing was "pressured" into waiving her appearance. *Id.* at 15–16. Third, she contends that the government "introduced surprise evidence after representing it would not" and that IJ

Kanellakos should not have relied upon the Form I-213 in denying bond. *Id.* at 16. The government contends that this Court lacks jurisdiction to consider any of these challenges and that, even if the Court does reach the merits, Ms. Blanco de Villatoro was not denied due process. ECF No. 14.

### A.    The Immigration Judge's bond analysis

This Court does not have jurisdiction to review an immigration judge's discretionary determinations regarding bond. Under 8 U.S.C. § 1226(e), "[t]he Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review." Accordingly, "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." *Id.*; *see also* 8 C.F.R. § 1003.19 (delegating authority to review custody and bond determinations to immigration judges). This provision "does not preclude challenges to the statutory framework that permits the alien's detention without bail" because "the extent of the Government's detention authority is not a matter of 'discretionary judgment,' 'action,' or 'decision[.]'" *Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018) (quotations and alterations omitted); *see also Miranda v. Garland*, 34 F.4th 338, 352 (4th Cir. 2022) (holding that the district court had jurisdiction to consider "the Attorney General's decision to adopt procedures placing the burden of proof on aliens detained under § 1226(a)" because plaintiffs brought "a constitutional challenge" of a "categorical, across-the-board nature, as opposed to [challenging] the application of § 1226 to specific cases"). But while "categorical" and/or "constitutional" challenges may be reviewable, the statute "forbid[s] review of the Attorney General's actions and decisions in individual proceedings." *Miranda*, 34 F.4th at 353. Thus, as several other judges of this Court have

recently concluded, both the plain text of § 1226(e) and binding precedent indicate that federal courts lack jurisdiction to review discretionary determinations regarding bond. *See, e.g.*, *Molina Cruz v. Bondi*, Case No. 26-cv-697-PX, 2026 WL 1291892, at *1 (D. Md. May 12, 2026) ("This Court lacks jurisdiction to review individualized bail review proceedings in the absence of a challenge to the constitutionality of the statutory framework itself."); *see also Chavez de Vasquez v. Baker*, Case No. 25-cv-3657-SAG, 2025 WL 3713773 (D. Md. Dec. 23, 2025); *Pinto-Nunez v. Bondi*, Case No. 26-cv-397-MJM, 2026 WL 672770 (D. Md. Mar. 10, 2026); *Santos Garcia v. Baker*, Case No. 26-cv-616-GLR, ECF No. 17 (D. Md. Mar. 9, 2026).

Applying these standards, this Court lacks jurisdiction to review Ms. Blanco de Villatoro's challenge to IJ Kanellakos's analysis of whether to grant or deny bond. "[I]mmigration judges . . . have the guidance of a list of factors outlined in the agency's decision in *In re Guerra* to utilize in determining whether bond is warranted and under what conditions." *Miranda*, 34 F.4th at 362 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). "These factors provide a non-exhaustive, but flexible menu of considerations relevant to detention decisions." *Id.*; *see also Guerra*, 24 I. & N. Dec. at 40 ("An Immigration Judge has broad discretion in deciding the factors that he or she may consider in custody redeterminations. The Immigration Judge may choose to give greater weight to one factor over others, as long as the decision is reasonable."). IJ Kanellakos discussed several factors in making his ruling and determined that bond would be withheld due to the failed home visits and the denial of Ms. Blanco de Villatoro's asylum and withholding applications. ECF No. 9-1 at 26–31. This analysis was individualized and discretionary. The Court lacks jurisdiction to review it. *See Pinto-Nunez*, 2026 WL 672770, at *4 ("[T]he Fourth Circuit has recognized that

immigration judges are afforded discretion to 'decide which factors are relevant in determining if an alien is entitled to bond' . . . and has found no failure of due process in that exercise of discretion[.]") (quoting *Miranda*, 34 F.4th at 365).

Ms. Blanco de Villatoro contends that the Court does have jurisdiction because IJ Kanellakos applied a "categorical" bar based upon the denial of her asylum and CAT withholding applications alone, rather than conducting an individualized determination. ECF No. 9 at 11–14. As evidence of this, Ms. Blanco de Villatoro emphasizes the IJ's statement that he "could base [his] decision on [the application denials] alone." ECF No. 9-1 at 36. She argues that this made the bond hearing "constitutionally deficient" and thus this Court's jurisdiction is not precluded by § 1226(e). ECF No. 15 at 3. But as just discussed, IJ Kanellakos considered various factors personal to Ms. Blanco de Villatoro on the record and explained his reasoning, including why the evidence supported his decision to deny bond. ECF No. 9-1 at 26–31. This was not a categorical bar. Although IJ Kanellakos noted that he "could" base his decision only on the application denials, he was clear that he *did* base his decision both upon the posture of Ms. Blanco de Villatoro's immigration case and the home visit issue: "The Court's decision in this respect . . . rests on two bases." ECF No. 9-1 at 27. Further, even if IJ Kanellakos *had* based his decision only upon the denial of asylum and CAT withholding applications, that would not necessarily have rendered his decision constitutionally deficient and reviewable, as the record otherwise reflects a personalized consideration. *See Pinto-Nunez*, 2026 WL 672770, at *4 ("The Court can understand Petitioner's frustrations but is not convinced that the immigration judge abdicated his duty to make an individualized assessment of flight risk. Petitioner cites no binding authority for the proposition that the Due Process Clause prescribes the manner in which an immigration

judge must weigh and balance evidence presented to him at a bond hearing."); *Chavez de Vasquez*, 2025 WL 3713773, at *1 ("Petitioner's claim, then, effectively challenges the quantum and nature of evidence placed before the IJ during her bond hearing, not the constitutionality of immigration court procedures. . . . Petitioner's recourse for what she believes to be an improper assessment of the merits of her entitlement to bond lies in her already pending appeal of the IJ's decision before the Board of Immigration Appeals.").

The Court has also reviewed the declaration Ms. Blanco de Villatoro submitted by Lawrence O. Burman, a retired immigration court judge. Mr. Burman describes recent trends in the immigration courts. ECF No. 9-4. But this declaration does not specifically address Ms. Blanco de Villatoro's case or address the fact that, on the record as presented, IJ Kanellakos made an individual determination regarding bond. *See Pinto-Nunez*, 2026 WL 672770, at *3 ("The affiants' observations are troubling, and I respect their opinions. But, ultimately, their views have no bearing on whether Petitioner received a bond hearing that meets the requirements of due process.").

In summary, IJ Kanellakos conducted a bond analysis that was individualized to Ms. Blanco de Villatoro's case. Regardless of whether this Court would have made the same determination, it "simply lacks the authority" to review that analysis. *Id.* at *2.

## B.    Procedural challenges

In addition to challenging IJ Kanellakos's consideration of the bond factors, Ms. Blanco de Villatoro also raises procedural errors that she contends rendered her hearing constitutionally inadequate. But none of these alleged violations deprived Ms. Blanco de Villatoro of due process.

First, the record clearly contradicts the contention that Mr. Jaskot was "coerced" into waiving Ms. Blanco de Villatoro's appearance. ECF No. 15 at 8. IJ Kanellakos raised the possibility of waiver initially, but told Mr. Jaskot, "[y]ou're counsel of record, and it's your decision in the exercise of your best judgment." ECF No. 9-1 at 7. Mr. Jaskot made the decision to waive Ms. Blanco de Villatoro's appearance following a recess in which he consulted with her family. *Id.* at 10–11. Any due process right to be present at the hearing was waived by Ms. Blanco de Villatoro's counsel. *See United States v. Watkins*, Case No. 08-cr-487-HEH, 2013 WL 5514295, at *4 (E.D. Va. Oct. 1, 2013) (holding, in a criminal context, that "[a] defendant has a due process right to be present at proceedings whenever his presence has a reasonable relation to his ability to defend against the charge" but that no due process violation occurred because "the record specifically shows that counsel, not the Court, waived [Defendant's] presence at the hearing"); *Layne v. Capra*, Case No. 17-cv-6736-ATGWG, 2018 WL 5258584, at *15 (S.D.N.Y. Sept. 17, 2018), *report and recommendation adopted*, 2018 WL 5255171 (S.D.N.Y. Oct. 22, 2018) ("[T]he Second Circuit has repeatedly found defense counsel may waive their client's appearance at trial.").

The record also reflects that Mr. Jaskot waived Ms. Blanco de Villatoro's appearance due, in part, to time constraints he felt from this Court's order that a bond hearing be conducted within 10 days of a motion for a hearing. *See* ECF No. 9-1 at 10 ("Mr. Jaskot: I'm going to waive [Ms. Blanco de Villatoro's] presence in the interest of following the federal court order and being expeditious."). Ms. Blanco de Villatoro controlled that timing, through her immigration counsel's decision regarding when to file a motion in the immigration court. *See* ECF No. 8 ¶ 3 (adopting the parties' joint proposal to require that a bond hearing "be held within ten (10) days of Petitioner's

filing such request with the Immigration Court") & ECF No. 6 (parties' joint notice). Her

counsel did not file any motion in this Court to extend that deadline or otherwise modify

this Court's order that she be given a bond hearing upon request. That decision was not

necessarily unreasonable—counsel may have wanted to resolve the bond issue more

quickly to provide Ms. Blanco de Villatoro clarity regarding her detention. But

ultimately, the time constraints Mr. Jaskot felt were self-imposed, and his choice to

waive Ms. Blanco de Villatoro's appearance did not create a due process violation.

In addition to the waiver issue, Ms. Blanco de Villatoro contends that the

government offered "surprise evidence" by introducing the Form I-213, and that IJ

Kanellakos should not have denied the subpoena for records or relied upon the Form I-

213 in making his bond determination. Regarding the "surprise" argument, the record

indicates that the government's statement before the hearing that it did not intend to

offer evidence was not a misrepresentation. The government did not affirmatively offer

any evidence or argument; instead it stated that it would defer to the immigration

court's determination. ECF No. 9-1 at 26. Counsel for DHS uploaded the Form I-213 in

response to IJ Kanellakos's questions regarding the nature of the ISAP violations, not as

part of an affirmative case to deny bond. *See id.* at 13 (The Court: "[A]re any of these

violations in the nature of—I'll give an example—[Ms. Blanco de Villatoro] was asked to

appear at a date and time to report and she failed to appear?"), 17 (Counsel for DHS:

"Your Honor, can I upload the 213 so that you can review it to see if it properly answers

your question?"). After the I-213 was uploaded, both Mr. Jaskot and IJ Kanellakos

reviewed the document at the hearing. *Id.* at 22. Ms. Blanco de Villatoro does not cite

any authority indicating that this procedure was improper, let alone that it violated her

right to due process, especially given that "the rules of evidence do not apply strictly in

administrative adjudications of immigration cases." *Marynenka v. Holder*, 592 F.3d 594, 601 (4th Cir. 2010) (quoting *Kourouma v. Holder,* 588 F.3d 234, 242 (4th Cir. 2009)). Regarding Ms. Blanco de Villatoro's contention that the IJ should not have considered the ISAP violations displayed on the Form I-213 and/or should not have denied her motion for a subpoena for records from BI Inc., IJ Kanellakos was clear that his decision was based upon failed home visits rather than potential failed electronic check-ins. ECF No. 9-1 at 31 ("[T]he Court will accept as a given that there may very well have been a software issue. . . . But it is the home visits that were marked as failed in the I-213."). Ms. Blanco de Villatoro has not explained how the IJ's consideration of the home visit issue specifically gave rise to a due process violation.

To the extent this Court has jurisdiction to review constitutional challenges to immigration court procedures, none of the arguments Ms. Blanco de Villatoro has made here rise to the level of a due process violation.

## III.    CONCLUSION

For the foregoing reasons, the Court will deny Ms. Blanco de Villatoro's motion to enforce. Because Ms. Blanco de Villatoro has now been granted the relief to which she is entitled pursuant to the Court's previous Order, ECF No. 8, the Court will grant Defendants' motion to dismiss. A separate order follows.


Date:  June 4, 2026                                    _____/s/_____
                                                        Adam B. Abelson
                                                        United States District Judge

13